IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs April 24, 2018

**STATE OF TENNESSEE v. ELIJAJUAN SMITH**

**Appeal from the Criminal Court for Hamilton County**
**No. 295465    Tom Greenholtz, Judge**

**No. E2017-01086-CCA-R3-CD**

The Defendant, Elijajuan Smith, appeals the Hamilton County Criminal Court's order revoking his probation for his burglary of a business and vandalism convictions and ordering him to serve his effective four-year sentence in confinement. The Defendant contends that the trial court abused its discretion by revoking his probation. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which ALAN E. GLENN and TIMOTHY L. EASTER, JJ., joined.

Julie Moya, Chattanooga, Tennessee, for the appellant, Elijajuan Smith.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Senior Counsel; Neal Pinkston, District Attorney General; and Bates Bryan, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On August 25, 2015, the Defendant pleaded guilty to burglary of a business and to vandalism, and the trial court sentenced the Defendant to an effective four years' probation. The court ordered this sentence be served consecutively to a ten-year probationary sentence for an aggravated burglary conviction in an unrelated case.[1]   On August 23, 2016, a

---

[1] On August 30, 2009, the Defendant pleaded guilty in case number 272276 to aggravated burglary and received a ten-year sentence on probation. The four-year sentence in case number 295465 was ordered to be served consecutively to the ten-year sentence in case number 272276. Although the probation violation report at issue in this appeal included case number 272276, the parties agreed at the revocation hearing that the ten-year sentence had expired. The probation violation allegation relative to case number 272276 was dismissed.

probation violation report was filed with the trial court, alleging that the Defendant had committed technical violations, including failure to show proof of employment, failure to report to his probation officer, and failure to pay court costs, supervision fees, and restitution. An amended probation report was filed with the court on August 25, 2016, alleging that on March 10, 2016, the Defendant had been arrested for criminal trespass, that he failed to report his arrest to his probation officer, that he failed to provide proof of employment, that he failed to report to his probation officer, and that he failed to pay court costs, supervision fees, and restitution. On August 26, 2016, a probation violation warrant was issued.

At the revocation hearing, probation officer Alex Finlay testified that although the Defendant's probation expired in case number 272276 on September 30, 2015, the Defendant's supervision involved probation revocations. Ms. Finlay said that the Defendant was placed on supervised probation, that the probation was revoked on November 5, 2012, that the Defendant was confined in the jail until February 1, 2013, and that the Defendant was released to supervised probation. Ms. Finlay said that on September 10, 2013, the Defendant's probation was revoked and that the court placed him on community corrections. Ms. Finlay said that on July 9, 2014, the Defendant was removed from community corrections and placed on unsupervised probation, which was later revoked on August 25, 2015. Ms. Finlay said, though, that the Defendant was placed on enhanced probation until the expiration of the ten-year sentence.

Ms. Finlay testified that the Defendant's probation at the time of the revocation hearing applied only to case number 295465 and that the Defendant had violated the conditions of his release. Ms. Finlay said that on March 10, 2016, the Defendant was arrested for criminal trespass and that the Defendant did not report the arrest. Ms. Finlay said that the Defendant failed to provide employment verification for July and August 2016 and had failed to report to the probation office since April 14, 2016. Ms. Finlay noted that although the Defendant appeared at the probation office on June 30, 2016, the Defendant submitted his employment verification and left without speaking to her. Ms. Finlay said that June 30, 2016, was her last contact with the Defendant. Ms. Finlay said that the arrest warrant was issued on August 26, 2016, and that the Defendant was arrested on February 15, 2017. Ms. Finlay said that the Defendant had failed to pay toward court costs and supervision fees and that on December 28, 2015, the Defendant submitted his only payment for $18.75 toward restitution, leaving a balance of $781.25.

Ms. Finlay testified that she last spoke with the Defendant on April 14, 2016, that she attempted to contact the Defendant to schedule meetings, and that the Defendant reported having transportation issues. Ms. Finlay said that the Defendant reported to her for his initial orientation, three days after orientation, and one additional time to discuss a positive drug screen and to obtain drug treatment. Ms. Finlay said that between January and June 2016, she was on leave, that the Defendant had another probation officer during that time, and that

the officer conducted home visits and attempted to schedule meetings at the probation office. Ms. Finlay said that the Defendant met with this probation officer on April 15, 2016, and that the Defendant should have reported to this officer until June 2016, when Ms. Finlay returned to work. Ms. Finlay said that June 2016 was the last time the Defendant came to the probation office, although she unsuccessfully attempted to contact the Defendant by telephone and in person at the Defendant's home.

On cross-examination, Ms. Finlay testified that the Defendant's primary problem was the failure to report to the probation office and that the Defendant's failure to report prevented her from placing the Defendant into a drug treatment program to bring him into compliance with the rules of probation. Ms. Finlay agreed that she did not plan to file a probation violation report simply because the Defendant did not report but said that she planned to file the violation report if the Defendant did not comply with the rules of probation. Ms. Finlay said that she never immediately filed a violation report because she wanted to do what she could to "keep him compliant." Ms. Finlay did not have any drug screen reports or documentation of her attempts to contact the Defendant.

Elonda Black, the Defendant's grandmother, testified for the defense that the Defendant had three young children. Ms. Black said that the Defendant had been without transportation for a while and that the Defendant had used the bus. She said that she had driven the Defendant to find employment "plenty of times." She thought the Defendant was "waiting to go back to the chicken house," although she did not know if management was holding a position for the Defendant until the resolution of the revocation hearing. Ms. Black said that she had retired in January 2017 and that she would ensure the Defendant maintained his appointments with his probation officer. On cross-examination, Ms. Black testified that the Defendant lived with her periodically but that he had also stayed with his mother and his fiancée. Ms. Black agreed that the Defendant listed her address as his residence.

The Defendant testified that he had three children under the age of five, all of whom attended daycare and that he had not always been able to pay the childcare expenses. He said that when he could not pay the fees, the children could not attend daycare until arrangements were made. He said he cared for the children or found a babysitter. He said that Ms. Black now assisted with childcare costs.

The Defendant testified that before the present probation violation, he worked at Goodwill and that meeting with his probation officer was difficult because of his work schedule, the hours the probation office was open, and the distance between the locations. He said that his lunch break was thirty minutes and that it took about forty minutes to get to the probation office by bus and twenty minutes on foot. He said that he was terminated from his job at Goodwill as a result of the time it took to go to the probation office. He said that if

-3-

he were returned to probation, he had a job waiting for him at Pilgrim's Pride chicken house and that he now had access to his grandmother's car to drive to work and to the probation office. He said that his work schedule would allow for meeting with his probation officer in the morning before his 3:30 p.m. shift.

On cross-examination, the Defendant testified that he would live with his grandmother if released to probation, although he admitted he had been living with his fiancée at the time of his arrest. The record reflects that before June 2016, the probation office was at another location, and the Defendant said that he had less difficulty getting to this previous location in order to meet with his probation officer. The Defendant said that after the probation office moved to its current location, he had difficulty getting to the office before it closed because he worked from 8:30 a.m. to 4:30 p.m. He said he worked at Goodwill from May 2016 to July 2016 and from August 2016 to September 2016.

The Defendant testified that on two occasions, he dropped off his employment verification at the probation office without meeting with his probation officer because he had to return to work. He said that his first employment verification was from Goodwill and that his second was from "Koch's chicken." He said, though, that he worked at Koch's chicken before Goodwill and that he lost his job at Koch's chicken after he came to the probation office in June 2016. He said that he left his probation officer a note stating he had to return to work, that the probation officer called him later, and that he thought he spoke to her, but he admitted he did not report to the probation office because of transportation problems. He said that when he was not home, his probation officer left notes when she came to perform a home visit. He agreed he had not been to the probation office since June 2016.

The Defendant testified that he was responsible for paying $800 restitution and agreed he had only paid $18.75. He said that financial difficulties prevented him from paying and noted that he had assisted his fiancée with finding a home, paying for childcare, and paying routine monthly expenses. He said that he thought he was required to pay $45 per month for supervision fees but that he never told his probation officer about his financial difficulties.

The Defendant testified that he received probation in two previous cases for convictions for aggravated burglary and aggravated assault and agreed that he violated the conditions of his probation twice, that he was placed on community corrections, and that the court granted his request to be returned to supervised probation. He also agreed that while he was on supervised probation, he was arrested for the present offenses and that he received probation.

On redirect examination, the Defendant testified that the primary reason for his failure to report to his probation officer was a lack of transportation and work constraints. The trial

court noted that the Defendant did not report to the probation office for eight months. The Defendant explained,

> I could have made – honestly I could have made a change. It was just lack of communication and . . . not just putting more effort into it. I could have put more effort into it now that I see . . . that I'm on the other side I could have put more effort into it, into handling the business that I needed to . . . at the time.

The trial court asked why the Defendant did not put forth more effort when his previous probation had been revoked for failure to report to his probation officer. The Defendant explained that he wanted "to do everything on [his] own and just didn't want to ask for any help." The Defendant stated that he now understood he needed help. When the court asked why he did not report the criminal trespass arrest to his probation officer, the Defendant said "[b]ecause I knew the consequence behind it." The Defendant thought he would have been returned to jail and said he knew his probation officer would have been disappointed. He said that he knew he had broken one of the rules of probation by being arrested. The Defendant's criminal history received as an exhibit showed that the Defendant pleaded guilty to criminal trespass on March 26, 2016.

The trial court determined that the Defendant violated the conditions of his probation by committing a new criminal offense of criminal trespass and pleading guilty in March 2016. The court also determined that the Defendant failed to report the arrest, which violated the conditions of probation. The court found that the Defendant had failed to report to his probation officer since June 2016, violating the conditions of his release. Relative to restitution, the court found that the Defendant had paid only $18.75 toward the $800 owed since December 2015, although the Defendant had been employed, at times, since 2015. The court found that no proof showed the Defendant had the inability to pay some money and that the Defendant would have had some income when he worked at Goodwill. The court found that the Defendant's failure to pay toward restitution violated the conditions of his probation. The court declined to render any findings relative to supervision fees.

The trial court determined that the Defendant had not been successful on probation and stated that the most serious violation was failing to report to a probation officer. The court stated that probation was a form of punishment and that the Defendant's failure to report to his probation officer and the failure to report his arrest showed that he was "done being punished" and was "no longer going to comply with the terms of [the] punishment." The court noted that it understood transportation issues but stated that transportation issues did not excuse the failure to report. The court found that during the eight months the Defendant failed to report, the Defendant could have found a way to report in spite of the transportation issues.

The trial court noted that the present probation violation was the Defendant's fourth and ordered his sentence into execution. The court stated that its decision was based upon the failure to report to his probation officer and the failure to report his new arrest. The court found that repeated criminal behavior while on probation was not something that could be tolerated. This appeal followed.

The Defendant contends that the trial court erred by revoking his probation and ordering him to serve his sentence in confinement. He argues that it was "illogical" for the court to rely upon Ms. Finlay's testimony because she did not produce any documentation of his failure to report for scheduled meetings, her telephone calls to him, and laboratory results of drug screens. He also asserts the court improperly disregarded his transportation difficulty in getting to the probation office. The State responds that the trial court properly revoked the Defendant's probation and ordered his sentence into execution. We agree with the State.

Our supreme court has concluded that a trial court's decision to revoke a defendant's probation "will not be disturbed on appeal unless . . . there has been an abuse of discretion." *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991) (citing *State v. Williamson*, 619 S.W.2d 145, 146 (Tenn. Crim. App. 1981)). An abuse of discretion has been established when the "record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred." *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980); *see State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001); *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978). When a trial court finds by a preponderance of the evidence that a defendant has violated the conditions of probation, the court "shall have the right . . . to revoke the probation." T.C.A. § 40-35-311(e)(1) (2014). After revoking a defendant's probation, the trial court may return a defendant to probation with modified conditions as necessary, extend the period of probation by no more than two years, order a period of confinement, or order the defendant's sentence into execution as originally entered. T.C.A. §§ 40-35-308(a), (c), -310 (2014). "In probation revocation hearings, the credibility of witnesses is for the determination of the trial judge." *Carver v. State*, 570 S.W.2d 872, 875 (Tenn. Crim. App. 1978) (citing *Bledsoe v. State*, 378 S.W.2d 811, 814 (Tenn. 1965)).

The record reflects that the probation violation report and warrant alleged that the Defendant had violated multiple conditions of his probation. The trial court found that the Defendant violated the conditions of his release by failing to report to his probation officer, engaging in criminal conduct based upon the criminal trespass arrest and conviction, failing to report the criminal trespass arrest to his probation officer, and failing to make payments toward restitution. However, the trial court relied primarily upon the failure to report to his probation officer and the failure to report his criminal trespass arrest to his probation officer in determining to revoke the Defendant's probation. Although the Defendant argues it was "illogical" to rely on Ms. Finlay's testimony because she did not present the trial court with documentation regarding her attempts to contact the Defendant and the dates the Defendant

failed to report to the probation office, the Defendant's testimony alone supports the court's determinations.

The Defendant testified that he had not reported to the probation office since June 2016. Although the Defendant attributed his failure to report to his work schedule and transportation difficulties, the Defendant conceded he had not been employed since September 2016. When asked why he did not report to his probation officer between September 2016 and his February 15, 2017 arrest, the Defendant said he could have put more effort into meeting with his probation officer regardless of his transportation difficulties. We note that although a trial court must determine that a defendant willfully failed to pay restitution before revoking probation on this basis, a trial court is not required to find that a defendant willfully failed to comply with other conditions of his release, including the failure to report to his probation officer. *See State v. Bobby Ray Graves, Jr.*, No. M2015-00619-CCA-R3-CD, 2015 WL 6560642, at *3 (Tenn. Crim. App. Oct. 30, 2015); *see also State v. Rudolph Miller Brooks, Jr.*, No. E2006-02070-CCA-R3-CD, 2007 WL 3353418, at *3 (Tenn. Crim. App. Nov. 13, 2017). The record supports the trial court's finding that the Defendant violated the conditions of his probation by failing to report to his probation officer.

Likewise, the record reflects that on March 10, 2016, while serving his sentence on probation in the present case, the Defendant was arrested for criminal trespass, and he pleaded guilty on March 26, 2016. The Defendant acknowledged the offense at the hearing and testified that he did not report the arrest to his probation officer because he "knew the consequences." He thought he would have been returned to jail and knew he had violated one of the rules of his release. We conclude that the record supports the trial court's finding that the Defendant violated the conditions of his probation by engaging in criminal conduct and by failing to report his arrest to his probation officer.

Because we have concluded that the record supports the trial court's findings that the Defendant violated multiple conditions of his probation, we likewise conclude that the court did not abuse its discretion by revoking the Defendant's probation. *See* T.C.A. § 40-35-311(e)(1). Once the court revoked the Defendant's probation, it had the authority to order the Defendant to serve his sentence in confinement. *See id*. §§ 40-35-308(a), (c), -310. The Defendant is not entitled to relief.

Based on the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
ROBERT H. MONTGOMERY, JR., JUDGE